# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

| | | |
|---|---|---|
| **MICHAEL C. ROUCHON** | * | **CIVIL ACTION NO. 10-1154** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Michael C. Rochon, born July 30, 1962, filed an application for supplemental security income on March 12, 2008, alleging disability as of October 16, 1989, due to degenerative disc disease of the cervical and lumbar spine, bilateral carpal tunnel syndrome, fibromyalgia, personality disorder, dysthymia, and right ulnar neuropathy.  After the Administrative Law Judge ("ALJ") denied the application, the Appeals Council reviewed the decision and further found that claimant did not have a severe mental impairment.  (Tr. 4-5).  Claimant appealed the decision to this Court.

FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards.  *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of Fed. R. Civ. P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) MRI  from Medical Center of LA New Orleans dated October 18, 2002**.  Claimant complained of low back pain.  (Tr. 184).  A lumbar  MRI showed very mild degenerative loss of signal at L5-S1 and a very small posterolateral protrusion of the lumbar disc which did not appear to contact the exiting nerve root or adjacent thecal sac.  (Tr. 184).  The cervical MRI revealed mild disc degenerative changes without contact of the spinal cord or compromise of the central canal or neural foramina.  (Tr. 185).

**(2) Records from Leonard J. Chabert Medical Center dated November 18, 2002 to August 11, 2008**.  On October 2, 2007, claimant presented with a history of chronic neck and low back pain with carpal tunnel syndrome and ulnar

neuropathy. (Tr. 180). He was agitated and uncooperative. (Tr. 181). It was noted that he was hostile on two visits, and left against medical advice before completion of the exam.

On January 31, 2008, claimant complained of chronic low back pain and carpal tunnel syndrome. (Tr. 178). He was angry and negative. (Tr. 179). He was mostly negative on examination, but complained of pain everywhere. The impression was probable fibromyalgia and probable carpal tunnel syndrome with questionable ulnar neuropathy.

An electromyography and nerve conduction study dated May 8, 2008, was abnormal. (Tr. 231). The impression was mild to moderate carpal tunnel syndrome in the upper left extremity and ulnar neuropathy across the elbow of the right upper extremity.

**(3) Records from St. Mary Mental Health Clinic dated October18, 2006 to June 4, 2007**. On October 18, 2006, claimant was seen briefly for 15 minutes before leaving abruptly. (Tr. 188). He was extremely agitated, irritable, and angry. He was discharged on June 4, 2007, for refusing services. (Tr. 194). The assessment was major depressive disorder, recurrent, severe, with psychotic features.

**(4) Physical Residual Functional Capacity ("RFC") Assessment dated April 14, 2008**.  Dr. Mark M. Walker found that claimant could lift/carry 20 pounds occasionally and 10 pounds frequently.  (Tr. 196).  He could stand/walk or sit about six hours in an eight-hour workday.  He had limited push/pull ability in the upper extremities.  He could perform all posturals occasionally, except that he could never climb ladders/ropes/scaffolds.  (Tr. 197).  He had no environmental limitations.  (Tr. 199).

**(5) Consultive Psychological Examination by Dr. Henry Lagarde, Ph.D. dated May 7, 2008**.  Claimant handled all personal grooming and dress without assistance, cooked simple meals, and took care of his children.  (Tr. 205).  He also cleaned his own room, made his bed, and washed his clothes.  He could shop alone, handle money, and drive.

On examination, claimant had moderate attending difficulties.  (Tr. 206).  His memory was fair.  He gave the impression that he was invested in making himself look needy and impaired while at the same time not seeming to obviously malinger.  (Tr. 206).  He was fairly well oriented to time, and was well oriented to place and person.

Claimant's affect was mostly irritable.  His capacity for judgment was fair to fairly poor.  His insight was questionable.  He had been attending St. Mary Mental

Health Center for a number of years, but claimed that he was treated unfairly and was no longer receiving treatment. (Tr. 207).

Dr. Lagarde's impression was dysthymic disorder. He opined that claimant's main problem appeared to be a persistent feeling that the government and professional people had not been doing enough to help him. He stated that claimant was able to understand, remember, and carry out simple, detailed instructions. (Tr. 208).

Dr. Lagarde reported that claimant was able to maintain attention to simple tasks for two-hour blocks of time. He stated that claimant would be able to maintain persistence and consistency at a full time job, except that claimant believed that medical complications made it impossible for him to work. He said that claimant would be able to cope with routine work stressors, could relate satisfactorily with supervisors and co-workers, and was capable of managing his own funds.

**(6) Psychiatric Review Technique ("PRT") dated May 29, 2008**. Joseph Kahler, Ph.D., assessed claimant for dysthymic disorder. (Tr. 211, 214). He found that claimant's impairment was not severe. (Tr. 211). He determined that claimant had mild difficulties in maintaining social functioning and maintaining concentration, persistence, or pace. (Tr. 221).

**(7) Records from Leonard J. Chabert Medical Center dated January 31, 2008 to April 3, 2009.**  On August 11, 2008, claimant was followed up for probable fibromyalgia and probable bilateral carpal tunnel syndrome.  (Tr. 227, 234).  The assessment was mild to moderate carpal tunnel syndrome.  (Tr. 228, 235).

On February 16, 2009, claimant complained of carpal tunnel syndrome, worse on the right, and low back pain.  (Tr. 244).  On examination, he had normal range of motion of the back, a negative straight leg test, and normal gait.  (Tr. 245).  Lumbar spine x-rays showed well-maintained alignment and intervertebral disc spaces and a few calcified plaques in the abdominal aorta and iliac arteries. (Tr. 246).

An MRI dated April 2, 2009, showed mild degenerative decreased height of L5-S1 with suggestion of left posterolateral outer annular fissure.  (Tr. 241).  A nerve conduction study of the right lower extremity was normal.  (Tr. 242).  An EMG of the right lower extremity showed findings consistent with chronic L5, S1 radiculopathy.

**(8) Claimant's Administrative Hearing Testimony**.  At the hearing on January 21, 2009, claimant was 46 years old.  (Tr. 26).  He testified that the onset of his alleged disability was October 16, 1989, which was the last time he had

worked.  (Tr. 26-27).   He had two years of college, and previous work as a carpenter's helper, grocery store stocker, and truck driver.  (Tr. 27).

Claimant complained of problems with his lower back and extremities, carpal tunnel syndrome, and fibromyalgia.  (Tr. 32-33, 50).  He was taking no medication besides Tylenol for pain.  (Tr. 27-28, 49).  He also complained of blurred vision.  (Tr. 52).

As to activities, claimant could bathe and clothe himself, keep his room clean, wash his own clothes, and care for his three children, ages 15, 14, and 11.  (Tr. 31, 38-40, 54).  He  also collected coins, read the Bible and went to church at least twice a month.  (Tr. 41).  He had a driver's license, but did not own a car.  (Tr. 38).

Regarding limitations, claimant could walk two to three blocks, sit or stand for about 30 to 45 minutes at a time, and had difficulties climbing stairs, stooping, and crouching.  (Tr. 43-45, 56).  He said that he could lift about 25 to 30 pounds, but had pain for two to four days afterwards.  (Tr. 43).  He used a cane to rise and walk, and wore braces on his wrists and hands.  (Tr. 45-46, 48).

Claimant complained of numbness in his hands, which gave him problems with holding things for a long time.  (Tr. 50-51).  He also reported problems with extreme heat and cold, and humidity.  (Tr. 52-53).  He said that he got along well

with people. (Tr. 53). He testified that he had to lie down 30 to 45 minutes during the day. (Tr. 54-55).

**(9) Administrative Hearing Testimony of Beth Drury, Vocational Expert ("VE")**. Ms. Drury classified claimant's past work as a construction worker, carpenter helper, and stocker as heavy and semi-skilled. (Tr. 60). The ALJ posed a hypothetical in which he asked the VE to assume a claimant of the same age and education, who had past relevant work as a carpenter's helper and stocker, and had the residual functional capacity for light work reduced by the requirement that he avoid concentrated exposure to extreme cold and heat, wetness or humidity, and excessive vibration, and could not climb ladders, ropes, or scaffolds. (Tr. 61). In response, the VE testified that such claimant not perform his past work, but could work as a security guard, of which there were 12,160 positions statewide and 767,270 nationally; information clerk, of which there were 1,280 positions statewide and 90,530 nationally, and customer service representative, of which there were 6,900 statewide and 606,900 nationally. (Tr. 61-62).

The ALJ posed a second hypothetical, in which he added a sit/stand option, use of a handheld assistive device (cane), limitations to occasional reaching and only occasional near acuity, as well as the non-exertional limitations that the work

be limited to simple, routine tasks, and low stress with no production rate or pace work. (Tr. 62-64). In response, the VE testified that there would be no jobs available. (Tr. 64). Additionally, Ms. Drury stated that claimant would be precluded from work if he was unable to engage in sustained work activity on a regular and continuing basis for eight hours a day, five days a week. (Tr. 65).

**(10) The ALJ's findings are entitled to deference**. Claimant argues that: (1) the weight of the evidence does not support the ALJ's residual functional capacity finding, and (2) the ALJ erred in failing to include his non-exertional limitations of dysthymia and personality disorder in the hypothetical to the vocational expert.[1]

First, the claimant argues that the ALJ's RFC finding is deficient as it is not substantially supported by the record. Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991).

Claimant alleged disability due to pain, as well as mental problems. To prove disability resulting from pain, an individual must establish a medically

---

[1] Upon review of Claimant's *pro se* brief, the undersigned finds that some of the issues addressed in the Commissioner's brief were not raised by claimant. The Court will address only those errors alleged by claimant.

determinable impairment that is capable of producing pain.  *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995).  Once a medical impairment is established, the subjective complaints of pain must be considered along with the medical evidence in determining the individual's work capacity.  *Id*.  Disabling pain must be constant, unremitting, wholly unresponsive to therapeutic treatment, and corroborated in part by objective medical testimony.  *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991).      Although the record is replete with claimant's assertions of pain, the medical evidence shows little more than mild findings in spine and nerve conduction tests, a normal range of motion of the back, normal posture and gait, and mild to moderate carpal tunnel syndrome of the upper left extremity.  (Tr. 183-185, 228-229, 231, 235, 238, 240, 242, 244-245, 251-252).  The ALJ, taking both the subjective and medical evidence into account, found that claimant's statements as to the intensity, persistence, and limiting effects of his symptoms were not credible.  (Tr. 15).  The Fifth Circuit has ruled that "a resolution of conflicts between the subjective evidence and the medical evidence should depend upon the ALJ's evaluation of the credibility of the claimant's complaints of pain."  *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1998).

The Fifth Circuit has also held that not all pain is of a disabling nature and subjective evidence need not be credited over conflicting medical evidence. *See Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992). Here, as noted by the ALJ, claimant was taking only over-the-counter medications for his pain. (Tr. 16, 27). *See Villa v. Sullivan*, 895 F.2d 1019, 1924 (5th Cir. 1990) (ALJ could rely on claimant's failure to take medication for the relief of severe pain to discredit his complaints); *Ostronski v. Chater*, 94 F.3d 413, 419 (8th Cir. 1996) (reliance on aspirin does not suggest a disabling condition); *Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) (lack of strong medication is inconsistent with subjective complaints of disability); *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988) (failure to seek aggressive treatment and limited use of prescription medications is not suggestive of disabling condition).

Additionally, the ALJ noted that claimant's daily activities, including doing household chores, cooking occasionally, walking, caring for his three children, coin collecting, going to church, and shopping alone belied his complaints of pain. (Tr. 16, 31, 38-40, 54). It is appropriate to consider the claimant's daily activities when deciding the claimant's disability status. *Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995). Thus, the ALJ's credibility determination is entitled to great deference. *See Harrell v. Bowen*, 862 F.2d 471, 479 (5th Cir. 1988).

Next, claimant argues that the ALJ's first hypothetical question to the VE was deficient as it did not include his non-exertional limitations of dysthymia and personality disorder.

A review of the decision shows that the ALJ specifically analyzed claimant's complaints of dysthymia and personality disorder, finding that although claimant had a severe mental impairment, it did not impose any greater limitations than those discussed in the ALJ's RFC finding. (Tr. 16-17). However, the Appeals Council found error in the ALJ's ruling, determining that claimant did not have a severe mental impairment. (Tr. 1-6). This became the Commissioner's final decision.

In formulating the second hypothetical to the VE, the ALJ, taking claimant's assertions of a severe mental impairment into account, included the limitations that claimant would need a job with simple, repetitive, one- or two- step instructions, a low-stress environment involving only occasional changes, and no production rate or pace work. (Tr. 64).

Ultimately, the ALJ determined that claimant's mental impairments did not impose further limitations to his RFC, and the Appeals Council later found that claimant did not have a severe mental impairment. The AC's finding is supported by opinions of the state agency psychiatric consultant, Dr. Kahler, who determined

that claimant experienced no more than mild mental functional limitations," [Tr. 223], as well as Dr. Lagarde, who found that claimant was capable of understanding, remembering, and carrying out detailed instructions and capable of maintaining persistence and consistency at a full-time job even with his dysthymic disorder. (Tr. 5, 208). It is well established that the ALJ is not bound by VE testimony which is based on evidentiary assumptions ultimately rejected by the ALJ. *See Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir.1985); *Falls v. Apfel*, 2000 WL 329233, *7 (E.D. La. 2000).

Additionally, the record reflects that claimant was hostile to hospital personnel, left against medical advice, and was discharged from mental health for refusing services. (Tr. 181, 194). It is well established that failure to follow prescribed medical treatment precludes an award of benefits. 20 C.F.R. § 416.930(a), (b); *Johnson v. Sullivan*, 894 F.2d 683, 685, n. 4 (5th Cir. 1990). Here, the ALJ and the Appeals Council rejected claimant's allegations based on the evidence of record. Thus, this argument lacks merit.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days

from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, **79 F.3D 1415 (5TH CIR. 1996).**

Signed August 8, 2011, at Lafayette, Louisiana.

*C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE